### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

MICHAEL DUNN                                   CASE NO.  6:20-CV-01063

VERSUS                                         JUDGE ROBERT R. SUMMERHAYS

CITY OF EUNICE ET AL                           MAGISTRATE JUDGE DAVID J. AYO

### MEMORANDUM RULING

Presently before the Court is the Motion for Judgment on the Pleadings [ECF No. 56] filed by Randy Fontenot ("Fontenot"), the former Chief of Police of the Eunice Police Department ("Eunice PD"). Fontenot seeks dismissal of all claims against him. Plaintiff, Michael Dunn ("Dunn") opposes the requested relief.

### I.
### BACKGROUND

Dunn is a lieutenant with the Eunice PD. The present lawsuit is the first of two lawsuits filed in this Court.[1] Dunn has named as defendants both Fontenot, in his individual capacity and in his official capacity as Chief of Police of the Eunice PD,[2] and the City of Eunice. Dunn alleges that on August 24, 2019, while at home and not on duty, he made a Facebook post on his personal Facebook page regarding criminal activity occurring at the Knights of Columbus Hall ("KC Hall").[3] Dunn claims he had been advised by another officer about a tip that there would be a shooting at the KC Hall that night.[4] Dunn's Facebook post detailed the history of criminal activity taking place at the KC Hall and warning the public to be aware of the potential problem and also

---

[1] The second lawsuit, civil action number 6:21-cv-1535, involves a broader set of facts and allegations as well as additional defendants. The second lawsuit will not be addressed in this ruling.
[2] At the time the lawsuit was filed, Fontenot was the Chief of Police of the Eunice PD. He no longer serves in that capacity.
[3] Complaint, ECF No. 1, ¶ 20.
[4] *Id.*, at ¶ 17.

1

requesting anyone who may witness criminal or suspicious activity to the police.[5] Dunn later made

an updated post on August 25, 2019 after a shooting did in fact occur at the KC Hall in the early

morning hours.[6]

Dunn alleges that he and his family live near the KC Hall and that he had previously

complained to both Fontenot[7] and the managers of the KC Hall.[8] Dunn claims that Fontenot is

personal friends with the managers of the KC Hall.[9]

On September 6, 2019, Fontenot notified Dunn – a permanent civil service employee – that

Fontenot was investigating Dunn over Dunn's August 24-25, 2019, Facebook post about the KC

Hall. Fontenot alleged that Dunn's Facebook post violated Eunice Police Department Procedures

Order 15-7 Code of Conduct and Ethics B.2 Conduct Unbecoming of an officer […as it] (iii)

impairs the operation of efficiency of the department, the officer, or city service.[10] Dunn was

subsequently placed on administrative leave based upon the Facebook post.[11]

Dunn appealed Fontenot's discipline of him to Eunice Municipal Fire and Police Civil

Service Board, which ruled in Dunn's favor. Thereafter, the Eunice Board of Alderman removed

Fontenot as the appointing authority and took away his authority to discipline officers such as

Dunn.[12]

Dunn asserts that "Fontenot has continued to retaliate against Dunn, negatively affecting

Dunn's conditions of employment and attempting to force Dunn's resignation."[13] Dunn also argues

in his Complaint that "Fontenot's retaliation against Dunn was and is extreme and outrageous and

---

[5] *Id.*, at ¶ 20.
[6] *Id.*
[7] *Id.*, at ¶ 13.
[8] *Id.*, at ¶ 16.
[9] *Id.*, at ¶ 7.
[10] *Id.*, at ¶ 24.
[11] *Id.*, at ¶ 25.
[12] *Id.*, at ¶ 26.
[13] *Id.*, at ¶ 27.

done either maliciously or with reckless disregard for Dunn's rights, including specifically Dunn's constitutionally protected right to speak freely on matters of public concern."[14]

Dunn alleges that Fontenot retaliated against him for engaging in speech protected by the First Amendment of the United States Constitution and Louisiana Constitution Art. I, § 7.[15] Dunn further alleges that Fontenot and the City of Eunice have implemented and enforced an unconstitutional policy that prohibits certain speech.[16] Dunn seeks a declaration that EPD Procedure Order #15-7, Code of Conduct and Ethics, Section I(B)(2) is unconstitutional, and an injunction prohibiting Defendants from enforcing the policy in the future.[17] Dunn also seeks to recover damages, attorneys' fees, and costs against all Defendants, and punitive damages against Fontenot in his individual capacity.[18] Fontenot now seeks to dismiss each of the claims against him in both is individual and official capacities.

## II.
### LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).[19] The "inquiry focuses on the allegations in the pleadings" and not on whether the "plaintiff actually has sufficient evidence to succeed on the merits."[20] "Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief

---

[14] *Id.*, at ¶ 28.
[15] *Id.*, at Count 1, ¶¶ 29-35.
[16] *Id.*, at Count 2, ¶¶ 36-56.
[17] *Id.*, at Count 3, ¶¶ 57-67.
[18] *Id.*, at ¶ 68.
[19] *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009).
[20] *Id.*

above the speculative level."[21] "A legally sufficient complaint does not need to contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action."[22] In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[23] Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.[24]

### III.
### LAW AND ANALYSIS

#### A.      Section 1983 Claim.

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution."[25] Section 1983 "is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere."[26] To state a claim under Section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged violation was committed by a person acting under color of state law.[27]

Plaintiff alleges that Chief Fontenot retaliated against him for engaging in speech protected by the First Amendment of the Constitution and Louisiana Constitution Art. I, § 7.[28] Specifically, Plaintiff alleges that his right to free speech was violated when he was placed on administrative leave following his August 2019 Facebook posts.[29] The First Amendment protects a public

---

[21] *National Bi-Weekly Admin. Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).
[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[23] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 667 F.2d 1045 (5th Cir. 1982).
[24] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
[25] *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120 (1992) (citing 42 U.S.C. § 1983).
[26] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).
[27] *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008).
[28] ECF No. 1, at ¶¶ 29-35.
[29] *Id*.

employee's right to speak as a citizen on matters of public concern, with some limitations.[30] However, not every action made in response to a public employee's exercise of his First Amendment right is actionable retaliation. "To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action."[31] A plaintiff alleging retaliation in violation of the First Amendment must plead each element of the prima facie case to state a cognizable claim at the Rule 12(b)(6) stage.[32]

### 1. *Adverse Employment Action.*

First, Fontenot alleges that Plaintiff has failed to allege sufficient facts showing that he was subjected to an adverse employment action. To succeed on a First Amendment retaliation claim, pursuant to 42 U.S.C. § 1983, a plaintiff must show he suffered an adverse employment action.[33] For purposes of a First Amendment retaliation claim, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."[34] The Fifth Circuit has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech."[35] The Fifth Circuit has held that "false accusations, verbal reprimands, and investigations [are] not actionable adverse

---

[30] *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Anderson v. Valdez,* 845 F.3d 580, 592-93 (5th Cir. 2016); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 691 (5th Cir. 2007).
[31] *Moss v. Harris Cty. Constable Precinct One,* 851 F.3d 413, 420-21 (5th Cir. 2017).
[32] *See Cox v. Kaelin*, 577 F. App'x 306, 312 (5th Cir. 2014).
[33] *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999).
[34] *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000).
[35] *Id*.

employment actions. Formal reprimands, however, do qualify as adverse employment actions and, when given in retaliation for First Amendment activity, are actionable."[36]

Plaintiff alleges that he suffered an adverse employment action when he was placed on administrative leave pending investigation.[37] Plaintiff, however, does not specify whether such leave was without pay. Plaintiff also alleges that he suffered an adverse employment action because former Fontenot "has continued to retaliate against [him by] negatively affecting [Plaintiff]'s conditions of employment and attempting to force [his] resignation."[38] Plaintiff alleges that his second lawsuit sets forth with specificity the numerous acts of retaliation that Fontenot has waged against him, which adversely affected Plaintiff's employment.

While Plaintiff may have alleged more specified factual details regarding his adverse employment actions in his subsequent lawsuit, the allegations in the present Complaint are insufficient. Plaintiff has requested leave to amend his Complaint in this regard. The Court concludes that leave should be granted.

2.  *Plaintiff's Speech in Regard to Ordinary Job Duties.*

Regarding the second element of a § 1983 First Amendment retaliation claim, the Court must determine "whether the plaintiff was speaking as a citizen . . . or whether the plaintiff was speaking in furtherance of the duties of his or her public employment."[39] "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication

---

[36] *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999).
[37] ECF No. 1 at ¶¶ 24-25; ¶ 31.
[38] ECF No. 1 at ¶ 27; see also ¶ 31.
[39] *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

from employer discipline."[40]  Fontenot alleges that Plaintiff's Facebook posts were made in the course of his ordinary job duties as a law enforcement officer.

In determining whether speech is made in furtherance of a public employee's job duties, the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[41] This distinction is important because while a public employee "by necessity must accept certain limitations on his or her freedom," "public employees do not surrender all their First Amendment rights by reason of their employment."[42] When a public employee speaks out as part of his job duties, or the execution or advancement of those duties, "the public employer's interest automatically outweighs the employee's, which is therefore unprotected."[43] The issue of whether a plaintiff speaks as an employee or citizen is a question of law for the Court to determine.[44]

Fontenot argues that Plaintiff is a law enforcement officer who has a duty to prevent and detect crime, enforce criminal and traffic laws, and protect the citizenry. Accordingly, Fontenot argues that when Plaintiff made a Facebook post regarding the potential for criminal conduct, Plaintiff was acting pursuant to his official duties. Plaintiff specifically alleges that he made the Facebook post when he was not on duty.[45] There is no allegation that Plaintiff was employed as a spokesperson or public information officer for the Eunice Police Department. In the event the Court were to accept Fontenot's argument, a law enforcement officer's speech regarding any issue related to crime would never enjoy the protections of the First Amendment regardless of whether

---

[40] *Id.*
[41] *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014).
[42] *Garcetti*, 547 U.S. at 417-18.
[43] *Anderson v. Valdez*, 845 F.3d 580, 593 (5th Cir. 2016); *see also Howell v. Town of Ball*, 827 F.3d 515, 523 (5th Cir. 2016) ("[T]he First Amendment does not protect speech made in furtherance of a public employee's official duties, regardless of whether that speech addresses a matter of public concern.").
[44] *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015) (citing *Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008)).
[45] ECF No. 1 at ¶ 32.

the officer is on-duty or off-duty, and regardless of whether the statements were made in the course of the officer's ordinary job duties. Fontenot has submitted no legal authority to support that broad interpretation and the Court is unwilling to make that leap. There is no indication that Plaintiff made the Facebook post as part of his job duties, execution of them, or the advancement of them.

### 3.    *Qualified Immunity*

When, as in this case, a plaintiff seeks money damages from government officials in their individual capacities under Section 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[46] The qualified immunity doctrine balances two often conflicting interests, namely, "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[47] In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."[48] Qualified immunity is nominally characterized as an affirmative defense.[49] However, once the defense is properly raised, "the plaintiff must rebut it by establishing (1) that the officer violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'"[50] Ordinarily, a plaintiff defeats the second prong of this test "by citing governing case law finding a violation under factually similar circumstances."[51] However, "[o]fficials can still be on notice that their conduct violates clearly established law even in novel

---

[46] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[47] *Id*.
[48] *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)) (internal quotation marks omitted).
[49] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).
[50] *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quoting *D.C. v. Wesby*, 138 S.Ct. 577, 589 (2018)).
[51] *Villarreal v. City of Laredo, Texas*, 44 F.4th 363, 370 (5th Cir. 2022); *see also Palko* at 294.

factual circumstances."[52] Although rare, "in an obvious case, analogous case law is not needed because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances."[53]

The Fifth Circuit has held that a defendant's assertion in his answer of the defense of qualified immunity does not affect the ordinary pleading requirements that apply to a plaintiff's complaint.[54] "We explained in *Schultea* that when, as here, a qualified immunity defense is asserted in an answer or motion to dismiss, 'the district court must'—as always—do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone."[55] "In so doing, we expressly required the district court to apply' Rule 8(a)(2)'s 'short and plain' standard' to the complaint."[56] "After applying this general pleading standard to the complaint, 'the court may [then], in its discretion, insist that a plaintiff file a reply tailored to [the defendant's] answer [or motion to dismiss] pleading the defense of qualified immunity.'"[57] Fontenot has now alleged that he is entitled to qualified immunity. The Court concludes that the Plaintiff must address the issue of qualified immunity in his amended complaint.

### B.    Unconstitutional Policy.

In Count 2 of the Complaint, Plaintiff alleges that EPD Procedure Order #15-7 Code of Conduct and Ethics, Section I(B)(2), governing conduct unbecoming of an officer is unconstitutional on its face and as applied to Plaintiff.[58] Fontenot argues that Plaintiff has failed to

---

[52] *Villarreal* at 370 (alteration omitted) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).
[53] *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (internal quotation marks, alteration omitted) (quoting *Wesby*, 138 S.Ct. 577, 590); *see also Villarreal* at 370.
[54] *Anderson v. Valdez*, 845 F.3d 580 (5th Cir. 2016).
[55] *Id*. at 589-590 (citing *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995)).
[56] *Id*. at 590.
[57] *Id*.
[58] ECF No. 1 at ¶¶ 36-56.

allege sufficient facts against Fontenot in his individual capacity as to Count 2. Plaintiff has now stipulated that he is asserting no individual capacity claims against Fontenot for declaratory and injunctive relief. The Court will therefore dismiss any claims for declaratory and injunctive relief against Fontenot in his individual capacity.

### C.    Official Capacity Claims against Fontenot.

Fontenot argues that the claims asserted by Plaintiff against Fontenot in his official capacity should be dismissed as he is no longer the chief of the Eunice Police Department. "An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending."[59] "The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution."[60] As the parties have both acknowledged that Kyle LeBoeuf now serves in the capacity as chief of the Eunice Police Department, the Court will order the substitution of Mr. LeBoeuf as the correct defendant to be named in the official capacity claims asserted by Plaintiff. Any further arguments regarding those official capacity claims may be asserted by Mr. LeBoeuf.

### D.    Punitive Damages against Fontenot in His Individual Capacity.

Fontenot has asserted a claim for punitive damages against Fontenot in his individual capacity. Fontenot argues that it is unclear whether Dunn seeks punitive damages under federal law or Louisiana law.[61] Plaintiff has clarified that he seeks punitive damages under federal law, not Louisiana law.[62]

---

[59] Fed. R. Civ. P. 25(d).
[60] *Id*.
[61] ECF No. 56-1, p. 24.
[62] ECF No. 60, p. 15.

Under federal law, the jury may award punitive damages only upon on a showing of the requisite intent.[63] Requisite intent, for punitive damages, is proven when an individual's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.[64]

Fontenot argues that Plaintiff has not alleged sufficient facts to demonstrate that Fontenot's actions were due to reckless or intentional disregard for Plaintiff's constitutional rights. In his Complaint, Plaintiff alleges that Fontenot knew that Plaintiff had the First Amendment right to speak as a citizen on matters of public concern but intentionally punished and retaliated against Plaintiff for doing so.[65] Specifically, Plaintiff alleges that Fontenot's retaliation against him was extreme and outrageous and done either maliciously or with reckless disregard for Plaintiff's rights, including Plaintiff's constitutionally protected right to speak freely on matters of public concern.[66] The Court finds that the allegations in the Complaint are sufficient to satisfy the pleading requirements for a claim for punitive damages.

## IV.
### CONCLUSION

Fontenot's Motion to Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART.  Any claims for declaratory and injunctive relief against Fontenot in his individual capacity are DISMISSED. Further, the Court will order the substitution of Kyle LeBoeuf as the correct defendant to be named in the official capacity claims asserted by Plaintiff. Finally, Plaintiff shall file an amended complaint within thirty (30) days to (1) state his alleged adverse employment actions; and (2) state facts to address Fontenot's claim for qualified immunity. In all other respects,

---

[63] *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 306 (1986).
[64] *Smith v. Wade*, 461 U.S. 30 (1983)
[65]ECF No. 1, ¶¶ 24-28.
[66] *Id.*, ¶ 28.

the Motion is DENIED without prejudice to Fontenot filing a subsequent motion following the filing of the amended complaint.

THUS DONE in Chambers on this 28th day of March, 2024.


_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

12