UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

MICHAEL DUNN                                    CASE NO.  6:20-CV-01063

VERSUS                                          JUDGE ROBERT R. SUMMERHAYS

CITY OF EUNICE ET AL                            MAGISTRATE JUDGE DAVID J. AYO

MEMORANDUM RULING

The present matter before the Court is the Motion to Dismiss Under Rules 12(b)(1), 12(b)(6) and 12(c) [ECF No. 82] filed by defendants, the City of Eunice and Chief Kyle Leboeuf. Plaintiff opposes the relief sought. Defendants have replied to the Plaintiff's opposition and the matter is now ripe for decision by the Court.

**I.**
**BACKGROUND**

This is a First Amendment retaliation case involving off-duty social media posts created by Michael Dunn, a lieutenant with the City of Eunice Police Department. Dunn had long complained about activities at the local Knights of Columbus Hall ("KC Hall") near his home. He alleges that the KC Hall "has been the scene of numerous incidences of gun fire, drug use, reckless driving, loud music, and other threats to public safety and nuisances affecting the Eunice residents who live near the" hall.[1] On August 24, 2019, Dunn created a Facebook post on his personal account while off duty that discussed his concerns about criminal activity at the KC Hall.[2] Dunn's post reported a tip by another Eunice police officer about a possible shooting threat at the KC Hall later that night.[3] Dunn's Facebook post detailed the history of criminal activity taking place at the

---

[1] ECF No. 1 at ¶ 20.
[2] Id.
[3] Id., at ¶ 17.

KC Hall and warned local residents of the possibility of a shooting. He also requested that anyone who witnessed criminal or suspicious activity at the KC Hall call the police department.[4] Dunn later posted an update to his earlier post to report that a shooting did indeed occur at the KC Hall in the early morning hours of August 25, 2019.[5]

Dunn contends that he reported criminal activity and other problems at the KC Hall to former Eunice Police Chief Randy Fontenot and the managers of the hall, but nothing was done. Dunn contends that Fontenot was a friend of the managers of the KC Hall and disapproved of Dunn's complaints.[6] Fontenot subsequently opened an investigation over Dunn's August 2019 Facebook posts, alleging that Dunn's posts violated a section of the Eunice Police Department Procedures Order 15-7 Code of Conduct and Ethics titled "Conduct Unbecoming of an Officer" (the "Officer Conduct Policy"). The Officer Conduct Policy states:

a. Officers shall conduct themselves at all times, both on duty and off duty, in such a manner as to reflect most favorably on the Department. He/She shall not conduct himself/herself in a manner that is unbecoming to a police officer.

b. Unbecoming conduct is that conduct which:

   i.   Brings the Department into disrepute;
   ii.  Reflects discredit upon the officer as a member of the Department;
   iii. Impairs the operations or efficiency of the Department, the officer, or City service;
   iv.  Detrimentally affects the morale of the Department's personnel;
   v.   May reasonably be expected to destroy public respect for Eunice Police Officers and/or confidence in the Eunice Police Department.

Dunn contends that he was charged with violating section b(iii) of the policy—conduct that "[i]mpairs the operations or efficiency of the Department, the officer, or City service"—and was placed on administrative leave.[7] Dunn appealed his discipline to the Eunice Municipal Fire and

---

[4] *Id.*, at ¶ 20.
[5] *Id.*
[6] *Id.* at ¶¶ 7, 13, 16.
[7] *Id.* at ¶¶ 24-25.

Police Civil Service Board, which ruled in Dunn's favor and reversed Fontenot's decision to impose discipline. The City of Eunice Board of Alderman then took the additional step of removing Fontenot's "appointing authority" and, accordingly, his power to fire and discipline officers.[8] Despite these actions, Dunn asserted that "Fontenot has continued to retaliate against Dunn, negatively affecting Dunn's conditions of employment and attempting to force Dunn's resignation."[9] Dunn also argued in his complaint that "Fontenot's retaliation against Dunn was and is extreme and outrageous and done either maliciously or with reckless disregard for Dunn's rights, including specifically Dunn's constitutionally protected right to speak freely on matters of public concern."[10]

The present action is the first of two federal court actions filed by Dunn alleging that Fontenot and others retaliated against him on account of speech (his KC Hall Facebook posts) protected by the First Amendment of the United States Constitution and Louisiana Constitution Art. I, § 7.[11] Dunn also challenges the constitutionality of the Officer Conduct Policy, alleging that the policy is facially unconstitutional under the First Amendment. In this action, Dunn originally sought damages for his First Amendment retaliation claim, and injunctive and declaratory relief with respect to the Officer Conduct Policy.[12]

Dunn originally named as defendants both Fontenot, in his individual capacity and in his official capacity as Chief of Police of the Eunice Police Department,[13] and the City of Eunice. After this suit was filed, Fontenot retired as Chief of Police and Kyle LeBouef was duly elected and sworn in as the new Eunice Chief of Police. On March 28, 2024, the Court entered a

---

[8] *Id.* at ¶ 26.
[9] *Id.* at ¶ 27.
[10] *Id.* at ¶ 28.
[11] *Id.* at ¶¶ 29-35.
[12] *Id.* at ¶¶ 57-67.
[13] At the time the lawsuit was filed, Fontenot was the Eunice Chief of Police. He no longer serves in that capacity.

Memorandum Ruling[14] granting in part and denying in part a motion for judgment on the pleadings filed by Fontenot. The Court ordered that Chief LeBouef be substituted for Fontenot as to the claims against him in his official capacity. The Court further ordered Dunn to file an amended complaint within thirty (30) days to cure the deficiencies in the complaint noted in the Memorandum Ruling. When Dunn failed to file an amended complaint, the Court entered a judgment dismissing all claims against Fontenot on May 30, 2024. The remaining Defendants have filed the present motion seeking dismissal of all remaining claims asserted by Dunn.

## II.
### LEGAL STANDARD

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure permit a party to challenge the subject matter jurisdiction of the district court.[15] "[A] claim is 'properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate' the claim."[16] Standing and mootness are required elements of subject matter jurisdiction and are therefore properly challenged on a Rule 12(b)(1) motion to dismiss.[17] The burden of proof on a Rule 12(b)(1) motion lies with the party asserting jurisdiction.[18] A dismissal based upon a lack of subject matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[19] "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the

---

[14] ECF No. 72.

[15] Fed. R. Civ. P. 12(b)(1).

[16] *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018)(quoting *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).

[17] *See Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017); *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct 402, 404, 30 L.Ed.2d 413 (1971).

[18] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[19] *Id.*, at 161.

complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[20] When filed in conjunction with other Rule 12 motions, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[21]

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."[22] "A legally sufficient complaint does not need to contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action."[23] In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[24] Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.[25]

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).[26] The "inquiry focuses on the allegations in the pleadings" and not on whether the "plaintiff actually has sufficient evidence to succeed on the merits."[27]

---

[20] *Id.*
[21] *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).
[22] *National Bi-Weekly Admin. Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).
[23] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[24] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 667 F.2d 1045 (5th Cir. 1982).
[25] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
[26] *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009).
[27] *Id.*

## III.
## LAW AND ANALYSIS

### A. First Amendment Retaliation.

Defendants first challenge Dunn's First Amendment retaliation claim. A plaintiff must satisfy four elements to recover on a First Amendment retaliation claim: (1) the plaintiff suffered "an adverse employment decision"; (2) the plaintiff's "speech must involve a matter of public concern"; (3) the plaintiff's "interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency"; and (4) the plaintiff's "speech must have motivated the Defendants' action." [28] With respect to the first element, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."[29] According to the Fifth Circuit, "mere accusations or criticism," "investigations," and "false accusations" are not adverse employment actions given "the narrow view of what constitutes an adverse employment action."[30] Moreover, an "employer's criticism of an employee does not constitute an actionable adverse employment action."[31] The Fifth Circuit has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech."[32]

Here, Dunn alleges that he suffered an adverse employment action when he was placed on administrative leave pending investigation.[33] He does not, however, allege that he was formally reprimanded nor does he allege that he was placed on leave without pay. Mere accusations or

---

[28] *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000).
[29] *Id.* at 157 (quoting *Pierce v. Texas Dep't of Crim. Just., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)).
[30] *Lowery v. Mills*, 157 F.4th 729, 743 (5th Cir. 2025) (quoting *Breaux*, 205 F.3d at 157–58).
[31] *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997).
[32] *Id.*
[33] ECF No. 1 at ¶¶ 24-25; ¶ 31.

investigations do not amount to adverse employment actions. Moreover, any investigation or discipline with respect to Dunn effectively ended when the Civil Service Board ruled in his favor. As explained by the Fifth Circuit, "employees who are investigated but not ultimately sanctioned following the investigation … suffer no adverse action."[34]

Plaintiff further alleges that he suffered an adverse employment action because Fontenot "has continued to retaliate against [him by] negatively affecting [Plaintiff]'s conditions of employment and attempting to force [his] resignation."[35] Again, Dunn never alleges what specific actions Fontenot took that amount to adverse employment actions. In the Court's prior Memorandum Ruling, the Court ruled that Dunn failed to plead facts showing an adverse employment action, and granted Dunn leave to replead. Dunn did not amend his complaint. Dunn's Memorandum in Opposition to Motion to Dismiss Under Rules 12 (b)(1), 12(b)(6) and 12(c),[36] Dunn states "[i]n light of the Court's previous ruling on Fontenot's Motion for Judgment on the Pleadings, R. Doc. 72, Dunn is not pursuing a claim for First Amendment retaliation in this case."[37] Accordingly, it appears that Dunn is abandoning his retaliation claim in the present case. The Motion for Judgment on the Pleadings is granted with respect to this claim.

### B. Declaratory and Injunctive Relief.

With the dismissal of Dunn's First Amendment retaliation claim, the only remaining claims in the present case are Dunn's request for declaratory and injunctive relief with respect to the Eunice Police Department's Police Conduct Policy. Dunn contends that this policy facially violates the Free Speech Clause of the First Amendment and Louisiana Constitution Art. I, § 7, that it is unconstitutional as applied to him, and that it chills protected speech. These remaining claims for

---

[34] *Lowery*, 157 F.4th at 743 (citing *Pierce*, 37 F.3d at 1150).
[35] ECF No. 1 at ¶¶ 27, 31.
[36] ECF No. 85.
[37] *Id.* at 7

declaratory and injunctive relief are thus purely prospective in nature. Defendants contend that Dunn lacks standing to assert prospective relief. Alternatively, they argue that his claims are moot.

Jurisdiction under Article III of the Constitution requires the presence of a "case or controversy" among the parties to a federal lawsuit.[38] Standing is one aspect of this case-or-controversy requirement.[39] Standing identifies "those disputes which are appropriately resolved through the judicial process,"[40] and "serves to prevent the judicial process from being used to usurp the powers of the political branches."[41] "The party invoking federal jurisdiction bears the burden of establishing standing," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."[42] Article III standing requires, at a minimum, that the plaintiff show (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a showing that the injury will likely "be redressed by a favorable decision."[43] The injury-in-fact requirement ensures that the plaintiff has a "personal stake in the outcome of the controversy" by requiring some showing that the plaintiff has "suffered or [is] imminently threatened with a concrete and particularized 'injury in fact.'"[44] The causation element of standing requires that this injury be "fairly traceable to the defendant's allegedly unlawful conduct,"[45] while "redressability" requires a showing that the injury is likely to be redressed by the

---

[38] U.S. Const. amend. III, § 2; *Spokeo, Inc. v. Robins*, ___ U.S.___, 136 S. Ct. 1540, 1549 (2016).
[39] *Spokeo, Inc.*, 136 S. Ct. at 1549 ("[T]he doctrine of standing derives from [Article III's] case-or-controversy requirement....")
[40] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[41] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).
[42] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation modified).
[43] *Lujan*, 504 U.S. at 560–561.
[44] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted); *Clapper*, 568 U.S. at 409 (injury must be "concrete, particularized, and actual or imminent ....") (quoting *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).
[45] *Allen v. Wright*, 468 U.S. 737, 751 (1984).

relief requested in the complaint.[46] While courts have adopted various "prudential" standing doctrines, these prudential limits on standing are often relaxed where, as here, a plaintiff alleges violations of the First Amendment.[47] Even so, plaintiffs must still satisfy "the irreducible constitutional minimum" for Article III standing—injury, causation, and redressability.[48]

To satisfy the "injury-in-fact" requirement for standing in the First Amendment context, Dunn must prove that he "(1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is arguably proscribed by the policy in question, and (3) the threat of future enforcement of the challenged policies is substantial."[49] The Court assumes, without deciding, that Dunn can satisfy the first requirement for proving injury in fact and instead addresses the second and third requirements.  With respect to the second requirement, Dunn must show that his future conduct—*i.e.* posting information about criminal or dangerous activities in the community on social media—is "arguably proscribed" by the policy in question.[50] The policy challenged by Dunn does not expressly proscribe online speech occurring when an officer is off duty. It is not a speech code as in *Speech First, Inc. v. Fenves*[51](written) or *Lowery v. Mills*[52] (unwritten), nor is it a social media policy that restricts an officer's online speech. Rather, the policy regulates a broad array of officer conduct to ensure that officers do not "conduct themselves in a manner that is unbecoming to a police officer." The Fifth Circuit has noted that because "police departments function as paramilitary organizations charged with maintaining

---

[46] *Id.*

[47] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

[48] *Henderson v. Stalder*, 287 F.3d 374, 385 n. 4 (5th Cir.2002) ("Although various prudential standing principles have been relaxed in some First Amendment cases, this relaxation does not eliminate the distinct and independent requirement of Article III that the dispute between the parties must amount to a case or controversy."); *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.

[49] *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (citation modified).

[50] *Id.*

[51] *Id.*

[52] 157 F.4th 729 (5th Cir. 2025).

public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer."[53]

To the extent that the policy was applied to Dunn's social meeting postings, it was applied based on former Chief Fontenot's interpretation of the policy to cover off duty social media postings on an officer's private account. The pleadings show that Fontenot's application of the policy to Dunn's postings was rejected by the Eunice Municipal Fire and Police Civil Service Board, which ruled in Dunn's favor with respect to Fontenot's investigation. The City's Board of Aldermen then stripped Fontenot of his power to discipline officers.[54] Thus, Dunn's own allegations refute his argument that the Eunice Police Department's Officer Conduct Policy "arguably proscribes" future off duty social media posts about criminal activity or dangers to the community.

Second, the pleadings also do not support the third requirement for showing injury in fact in the First Amendment context—that "the threat of future enforcement of the challenged polic[y] is substantial."[55] Again, Fontenot's attempt to use the Officer Conduct Policy to investigate Dunn for his social media posts was reversed, and the City's Board of Aldermen stripped Fontenot of the power to discipline Dunn or any other officer. Moreover, Fontenot retired after this suit was filed and the summary judgment record does not include any evidence that the City's current police chief, Kyle LeBoeuf, has sought to apply this policy to social media posts by Dunn or any other officer. However, Dunn points to the following deposition testimony by Chief LeBoeuf:

> **Q.** Alerting the public of potential criminal activity is something that should be allowed of a police officer, right, on his own time?

---

[53] *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir.2007) (emphasis added) (internal quotations and citation omitted).
[54] Dunn alleged in his complaint that he was initially placed on administrative leave by former Chief Fontenot but that he appealed that discipline to the Eunice Municipal Fire and Police Civil Service Board who ruled in Dunn's favor·
[55] *Speech First, Inc.*, 979 F.3d at 330.

A.      Those posts are normally made by the chief, me. But if -- if any officer is aware of information that could immediately -- could immediately affect the danger of the public at the time, **then I don't know if a social media post would be an appropriate way to go**.

Q.      Well, let's just keep it with the First Amendment. Alerting the public of potential criminal activity by an off-duty police officer on his own time, on his own computer, would be something that the First Amendment of the federal constitution allows him to do, right?

**MR. REED**: Object to form.

A.      As long as he's not violating policy. I mean, freedom of speech, you know. So I think the proper way to do it would be to notify the on-duty shift supervisor if it's immediate action.[56]

Dunn argues that this statement shows that LeBouef intends to enforce the policy in the same manner as Fontenot. Assuming that this testimony can be considered with respect to a motion challenging the pleadings, this testimony, when read in context, shows that Chief LeBoeuf was not referring to disciplining officers based on social media posting. Instead, he was questioning the effectiveness of posting about ongoing criminal activity online versus reporting the activity directly to the Police Department.

Dunn's complaint includes no other allegations showing that the Officer Conduct Policy was used to chill off-duty speech after Fontenot was stripped of his appointing authority or after Fontenot retired and left the Eunice Police Department. Nor does the complaint show that Chief LeBouf has used the Department's Officer Conduct Policy to discipline Dunn or any other officer for off-duty social media posts. Dunn had the opportunity to amend his complaint when LeBouef succeeded Fontenot as Chief of Police to address the likelihood of future enforcement but did not.[57]

---

[56] ECF No. 85, Exhibit A, pp. 227, line 23 – 228, line 19 (emphasis added).

[57] This case is distinguishable from *Seals v. McBee*, 898 F.3d 587, 593 (5th Cir. 2018). In *Seals*, the plaintiff was arrested for allegedly threatening a public official under La. R.S. 14:122, which criminalizes "public intimidation and retaliation against an elected official."[57] The plaintiff, however, was not formally charged and the district attorney disavowed prosecution.  The Fifth Circuit nevertheless concluded that the plaintiff had adequately demonstrated an injury in fact because the plaintiff "has a concrete stake in this litigation because the District Attorney can change his mind and prosecute him."[57] According to the court "the specter of prosecution for violating a potentially

Moreover, even if Dunn could establish standing at the time he commenced this suit, his claims based on Fontenot's enforcement of the Department's Officer Conduct Policy are moot. The Fifth Circuit has described "mootness" as "the doctrine of standing in a time frame."[58] In other words, a plaintiff must not only establish that he or she has standing under Article III at the commencement of the case, the plaintiff's personal stake that "exist[ed] at the commencement of the litigation (standing)" must "continue throughout [the case's] existence (mootness)."[59] Accordingly, even if a plaintiff has standing at the commencement of the case, the case may nevertheless become moot by events that occur during litigation and eliminate the plaintiff's personal interest in the case.[60]

Here, Dunn's First Amendment claims are based on Fontenot's use of the Officer Conduct Policy to discipline Dunn for social media posts that Fontenot did not like. Fontenot retired after this case was commenced, and there are no allegations or other evidence that his successor, Chief LeBouf, has applied the policy to regulate off duty social media posts. In sum, the Court lacks jurisdiction over Dunn's First Amendment claims for injunctive relief and a declaratory judgment with respect to the Eunice Police Department's Officer Conduct Policy. Dunn has not pled facts satisfying the three elements required to show injury in fact and, therefore, lacks standing to bring his First Amendment challenge to the Eunice Police Department's policy. Even if Dunn could establish standing at the commencement of the case, his claims for injunctive relief and a declaratory judgment with respect to the officer conduct policy are moot.

---

unconstitutional law" with prosecution hanging over the plaintiff's head demonstrated an injury that was concrete, particularized, and actual or imminent.[57] Here, however, Dunn had no threat hanging over his head with regard to further enforcement of the "conduct unbecoming an officer" policy based on the actions of the Eunice Municipal Fire and Police Civil Service Board and the City's Board of Aldermen.

[58] *Centers for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

[59] *Id.*

[60] *Pool v. City of Houston*, 978 F.3d. 307, 313 (5th Cir. 2020).

## IV.
## CONCLUSION

For the reasons stated above, the Court GRANTS the Motion to Dismiss [ECF No. 82]. All of the claims against the defendants are DISMISSED.

THUS DONE in Chambers on this 24th day of June, 2026

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE